# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PAUL A. LATORRE,

Defendant-Appellant.

UNPUBLISHED
November 29, 2016

No.  327947
Macomb Circuit Court
LC No.  2014-002838-FH

Before:  M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

Defendant was convicted by a jury of fourth-degree criminal sexual conduct (force or coercion) (CSC-IV), MCL 750.520e(1)(b).  He was sentenced to five years' probation for the CSC-IV conviction.  Defendant appeals as of right.  For the reasons set forth in this opinion, we affirm.

## I.  BACKGROUND

This appeal arises out of the victim's claims that sometime in October, 2013, defendant approached her at work and pinched her nipple.  She also testified that defendant had engaged in similar objectionable behavior in the months leading up to the October, 2013 incident and for several months thereafter.  For example, he had grabbed at her breasts, crotch, and buttocks on other occasions, and made crude comments to her suggesting they should have sex.  The victim indicated that she did not report any of defendant's behavior to their employer, because the facility had a policy under which all people involved in a workplace dispute were suspended without pay until the matter could be investigated and resolved.  However, another coworker advised their employer about the situation on March 25, 2014, after the victim complained to him that defendant had exposed his penis to her the day before.  Pursuant to the workplace policy, the victim and defendant were both suspended as a result of the report.  On March 27, 2014, acting on the advice of her union representative, the victim filed a police report about the October, 2013 nipple-pinching incident.  Thereafter, defendant was charged with, and eventually convicted of, CSC-IV.

## II.  EVIDENTIARY CHALLENGES

-1-

On appeal, defendant raises two evidentiary issues. First, defendant argues that the trial court erred by allowing testimony indicating that defendant engaged in similar, uncharged acts, including grabbing the victim's crotch, smacking her buttocks, and exposing his penis to her. Defendant asserts that such evidence was inadmissible under MRE 404(b) because it constituted improper propensity evidence and the prosecutor failed to provide the required advanced notice of her intention to introduce other-acts evidence. In a related argument, defendant contends that he was denied the effective assistance of counsel when his attorney failed to object to the introduction of the other-acts evidence. For his second claim of error, defendant argues that the trial court abused its discretion by allowing evidence, over defense counsel's objection, that defendant told the victim he wanted to have sex with her 14-year-old daughter. According to defendant, the testimony about his comment lacked relevance and presented such a high risk of unfair prejudice that it should have been excluded, even if relevant.

To preserve a claim that evidence was improperly admitted at trial, the party challenging the evidence must object at the time of admission. *People v Knox*, 469 Mich 502, 508; 674 NW2d 366 (2004). The party's objection must be based on the same ground asserted on appeal. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). Defense counsel objected to various portions of the testimony concerning defendants other uncharged conduct, but his objections were not based on the inadmissibility of the evidence under MRE 404(b). Thus, defendant's MRE 404(b) issue is not preserved for appeal. However, because defense counsel made a timely objection to the victim's testimony regarding defendant's comment about her daughter, that issue is properly preserved. To the extent that defendant's first claim of error also alleges that he was denied the effective assistance of counsel, that issue is also unpreserved because defendant failed to request a new trial or *Ginther*[1] hearing in the trial court. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000).

When the issue has been properly preserved, this Court generally reviews a trial court's decision to admit evidence for an abuse of discretion. *People v Gipson*, 287 Mich App 261, 262; 787 NW2d 126 (2010). "When the decision involves a preliminary question of law however, such as whether a rule of evidence precludes admission, we review the question de novo." *People v Mardlin*, 487 Mich 609, 614; 790 NW2d 607 (2010). Abuse of discretion exists if the trial court's decision "is outside the range of reasonable and principled outcomes." *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). There is generally no abuse of discretion when the trial court's decision involves a close evidentiary question. *Sabin (After Remand)*, 463 Mich at 67. But "[a] defendant pressing an unpreserved claim of error must show a plain error that affected substantial rights, and the reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Parker*, 288 Mich App 500, 509; 795 NW2d 596 (2010), citing *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Ineffective assistance of counsel claims present a mixed question of fact and constitutional law. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

Generally, the lower court's findings of fact are reviewed for clear error, and its rulings on questions of constitutional law are reviewed de novo. *Id.* However, when the defendant's ineffective assistance of counsel claim was not preserved at the trial court level, this Court's review is limited to errors that are apparent from the record on appeal. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

## A. OTHER-ACTS EVIDENCE

The admissibility of evidence concerning a defendant's other crimes, wrongs, or acts is governed by MRE 404(b), which provides, in part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. [MRE 404(b)(1).]

The Michigan Supreme Court has observed that, by its plain terms, MRE 404(b) applies to evidence which presents a risk of an improper character-to-conduct inference only if the evidence introduces crimes, wrongs, or acts *other than* the "conduct at issue in the case," i.e., the charged offense. *People v Jackson*, 498 Mich 246, 262-263; 869 NW2d 253 (2015). In other words, MRE 404(b) does not restrict the admissibility of evidence concerning acts that constitute part of the charged offense, directly evidence the requisite conduct, or contemporaneously facilitate the commission of the offense. *Id.* at 263.

Defendant was charged with one count of CSC-IV, arising from the victim's allegation that he pinched her nipple in October, 2013. When charged pursuant to MCL 750.520e(1)(b), as defendant was here, "[a] person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and . . . [f]orce or coercion is used to accomplish the sexual contact." MCL 750.520e(1)(b); see *People v Green*, 313 Mich App 526, 538; 884 NW2d 838 (2015). The other-acts evidence in this case consisted of testimony that defendant touched the victim's breasts, buttocks, and crotch on other occasions, and exposed his penis to her. These acts did not constitute part of the sexual contact that occurred in October, 2013, directly evidence that contact, or otherwise facilitate defendant's commission of the offense. As such, the evidence concerning defendant's other acts fell squarely within the scope of MRE 404(b). See *Jackson*, 498 Mich at 262-263.

In determining the admissibility of other-acts evidence under MRE 404(b), a trial court should consider the following analytical framework, first set articulated in *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), amended by 445 Mich 1205 (1994):

> To admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is not simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character. The

prosecution thus bears an initial burden to show that the proffered evidence is relevant to a proper purpose under the nonexclusive list in MRE 404(b)(1) or is otherwise probative of a fact other than the defendant's character or criminal propensity. Evidence relevant to a noncharacter purpose is *admissible* under MRE 404(b) *even if* it also reflects on a defendant's character. Evidence is *inadmissible* under this rule *only* if it is relevant solely to the defendant's character or criminal propensity. . . . Any undue prejudice that arises because the evidence also unavoidably reflects the defendant's character is then considered under the MRE 403 balancing test, which permits the court to exclude relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice. . . ." MRE 403. Finally, upon request, the trial court may provide a limiting instruction to the jury under MRE 105 to specify that the jury may consider the evidence only for proper, noncharacter purposes. [*Jackson*, 498 Mich at 259-260, quoting *Mardlin*, 487 Mich at 615-616 (alterations in original).]

By eliciting testimony regarding defendant's other acts without seeking the trial court's preapproval and without objection from defendant, the prosecutor never identified a proper, nonpropensity purpose for the other-acts evidence in the trial court. On appeal, defendant contends that the other-acts evidence was admitted solely to paint him as "a deviant with a propensity for inappropriate sexual conduct." On appeal, the prosecutor argues that the other-acts evidence was admissible for the purpose of establishing that defendant acted with a sexual purpose when he pinched the victim's nipple. By definition, the contact that is criminalized under CSC-IV is intentional contact with intimate parts of the defendant's or victim's body, where that contact is done "for the purpose of sexual arousal or gratification," or "for a sexual purpose," or "in a sexual manner." MCL 750.520a(q). Thus, it was of critical importance that the prosecutor demonstrate defendant's purpose.

The evidence presented at trial concerning the October, 2013 incident was limited. The victim's explanation of the event did not go beyond the bare fact that defendant pinched her nipple extremely hard and, in response, she screamed at him. The occurrence was corroborated by James Gibson, but there was no evidence about defendant's conduct that day that suggested defendant's purpose in touching the victim. Though we are struggling to discern a nonsexual purpose for such contact, the evidence of defendant's other sexually-charged behavior toward the victim certainly made it more probable that he acted with a sexual purpose or for his own sexual arousal or gratification when he pinched the victim's nipple. Accordingly, the evidence was logically relevant for a legitimate, nonpropensity purpose, even if it had a secondary effect of casting defendant's character in a negative light.

Under the *VanderVliet* analytical framework, logically relevant other-acts evidence is still subject to exclusion under MRE 403 if its "probative value is substantially outweighed by the danger of unfair prejudice . . . ." *Jackson*, 498 Mich at 259-260. As this Court has recognized before, all evidence offered against a party at trial is prejudicial, and only unfairly prejudicial evidence must be excluded. *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). Unfair prejudice refers to "the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Id*. at 614 (citation omitted). Nothing in the record suggests that the other-acts evidence interjected improper considerations in this matter. To the

extent that the testimony regarding defendant's other acts could have presented a danger of unfair prejudice, that danger did not substantially outweigh the significant probative value of the evidence, given the lack of direct evidence concerning defendant's purpose on the date in question. Moreover, the danger of unfair prejudice was alleviated by the court's instructions to the jury, advising it of the limited purpose for which the evidence could be considered.

In sum, the other-acts evidence was admissible under MRE 404(b) because it was logically relevant for a nonpropensity purpose and its probative value was not substantially outweighed by the danger of unfair prejudice. However, defendant also contends that the other-acts evidence should not have been admitted because the prosecutor failed to comply with the procedural notice requirements mandated by MRE 404(b)(2). It is uncontested that the prosecutor did not provide defendant with formal notice of her intention to admit other-acts evidence under MRE 404(b). This failure amounts to plain error because MRE 404(b)(2) "unambiguously requires notice to the defense at some time *before* the prosecutor introduces the prior bad acts evidence." *People v Hawkins*, 245 Mich App 439, 453; 628 NW2d 105 (2001). Nevertheless, because this plain error was unpreserved in the trial court, defendant must also demonstrate that the error affected his substantial rights, which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014), quoting *Carines*, 460 Mich at 763.

In *Jackson*, our Supreme Court found that even if the prosecution fails to make a motion under MRE 404(b)(2), the defendant must demonstrate that this error was "more probably than not…was outcome determinative." *Jackson*, 498 Mich at 270 (citation omitted). As indicated above, our review of the record evidence leads us to conclude that the victim's testimony was substantively admissible under MRE 404(b), notwithstanding the prosecution's failure to make a proper motion and the trial court's failure to properly analyze it under that rule. And while it was error for the prosecution not to provide, and the trial court not to require, "reasonable notice" of the victim's testimony under MRE 404(b)(2), the defendant has not demonstrated that this error "more probably than not . . . was outcome determinative." *Jackson*, 498 Mich at 270. Accordingly, we find that the lack of proper pretrial notice did not result in the admission of substantively improper other-acts evidence. Thus, as our Supreme Court held in Jackson: "…although the defendant was not afforded his due 'opportunity to marshal arguments' against its admission before it was introduced at trial, *VanderVliet*, 444 Mich at 89 n 51, he has not shown that any such arguments would have been availing, or would have affected the scope of testimony ultimately presented to the jury." *Jackson*, 498 Mich at 270-271. As was the case in *Jackson*, while it can be argued here that the defendant suffered "unfair surprise" from the unexpected introduction of this testimony at trial, based on the protracted nature of this series of workplace incidents, defendant was admittedly aware of the victim's general version of events before trial. *Id*. at 271. Therefore, we cannot glean from defendant's arguments that defendant would have approached trial or presented his defense differently had he known in advance that the victim would be permitted to testify as she did. In line with our Supreme Court's holding in *Jackson,* we therefore cannot conclude that "defendant suffered outcome-determinative prejudice from the prosecution's failure to follow, and the trial court's failure to apply, MRE 404(b)(2). See also, *Hawkins*, 245 Mich App at 455-456 (concluding the defendant was not entitled to relief due to the prosecutor's failure to provide the notice required under MRE 404(b) because, *inter alia*, the lack of notice did not result in the prosecutor being 'able to use irrelevant, inadmissible

prior bad acts evidence to secure [the defendant's] conviction' and the defendant 'has never suggested how he would have reacted differently to th[e] evidence had the prosecutor given notice'"). *Jackson*, 498 Mich at 279-280. Accordingly, defendant is not entitled to relief on this issue.

Next, defendant argues that trial counsel's failure to object to the 404(b) evidence and constituted ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the defendant must show that: (1) counsel's representation at the proceeding "fell below an objective standard of reasonableness"; and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012), citing *Strickland v Washington*, 466 US 668, 688-694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defense counsel's failure to object to the introduction of other-acts evidence which the assistant prosecutor failed to properly notice by motion under MRE 404(b)(2) fell below a standard of reasonableness and constituted ineffective assistance of counsel. However, given the admissibility of the other-acts evidence in this case, defendant has failed to establish that there is a reasonable probability that the outcome of the proceeding would have been different in the absence of defense counsel's allegedly deficient performance. Consequently for the reasons set forth above, defendant cannot demonstrate that "but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Vaughn*, 491 Mich at 670. (Citation omitted). Accordingly, defendant is not entitled to relief on this issue.

## B. RELEVANCE AND MRE 403

Next, defendant argues on appeal that a statement allegedly made by defendant about the victim's daughter. According to the testimony of the victim, after seeing a picture of the victim's underage daughter, defendant made a comment that he would like to have sex with the victim's daughter. "Evidence is generally admissible if it is relevant." MRE 402; *Gipson*, 287 Mich App at 262. The concept of relevance can be broken into two elements: materiality and probative value. *McGhee*, 268 Mich App at 610. "Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial." *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998), quoting McCormick, Evidence (4th ed), § 185, p 773. "The probative force inquiry asks whether the proffered evidence tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Crawford*, 458 Mich at 389-390 (internal quotation marks and citation omitted).

On appeal, the prosecutor contends that defendant's remark about the victim's daughter was relevant because it tended to make it more probable that defendant had a sexual purpose when he pinched the victim's nipple in October, 2013. As already noted above, whether defendant had a sexual purpose when he acted was of consequence to this action because he could only be convicted of CSC-IV if the contact "can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . ."

MCL 750.520a(q). Thus, because defendant's purpose was at issue, the evidence satisfies the materiality component of relevancy.

However, while defendant's purpose may have been material to the action, it does not necessarily follow that his comment about the victim's daughter had any tendency to make defendant's sexual purpose more or less probable than it would have been without the evidence. Unlike the evidence concerning defendant's other behavior toward the victim, defendant's remark about a third-party minor did nothing to illustrate what his intentions toward the victim were, even if his comment was spoken to the victim and concerned her daughter. The timing of defendant's alleged comment is also noteworthy: The victim testified that defendant's remark was made sometime *before* he began harassing her. Even if we accepted the prosecutor's contention that any sexual remark exemplified the tenor of defendant's interaction with the victim on the day in question, defendant's comment about her daughter would still lack probative value as to his purpose for actions that took place at least a year later. Having failed the probative value inquiry, the evidence concerning defendant's remark about the victim's daughter should have been excluded as irrelevant under MRE 402.

Defendant also maintains that the trial court abused its discretion when it overruled defense counsel's objection to this line of inquiry because it was highly inflammatory and unfairly prejudicial. Pursuant to MRE 403, even if proposed evidence meets the test for relevancy, it may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Gipson*, 287 Mich App at 262.

> Assessing probative value against prejudicial effect requires a balancing of several factors, including the time required to present the evidence and the possibility of delay, whether the evidence is needlessly cumulative, how directly the evidence tends to prove the fact for which it is offered, how essential the fact sought to be proved is to the case, the potential for confusing or misleading the jury, and whether the fact can be proved in another manner without as many harmful collateral effects. [*People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).]

Evidence may be unfairly prejudicial if it has a tendency to interject immaterial considerations into the lawsuit, *McGhee*, 268 Mich App at 614, or if it is likely to be given undue or preemptive weight by the jury, *Blackston*, 481 Mich at 462.

Assuming, *arguendo*, that defendant's comment about the victim's daughter did have some probative value relative to his purpose in pinching the victim's nipple, we agree that the prejudicial effect of such evidence substantially outweighed its limited probative value. However, the improper admission of defendant's comment does not warrant reversal unless "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Burns*, 494 Mich 104; 110; 832 NW2d 738 (2013) (internal quotation marks omitted). "The reviewing court must examine the nature of the error and assess its effect in light of the weight and strength of the untainted evidence." *People v Phillips*, 469 Mich 390, 397; 666 NW2d 657 (2003) (internal quotation marks omitted). There was significant evidence apart from defendant's comment about the victim's daughter that supported his conviction in this matter. The victim testified that defendant

pinched her nipple in October, 2013, and recalled several other occasions on which defendant behaved in an inappropriate sexual manner toward her over the course of a year. One of the victim's coworkers corroborated her allegation, noting that he saw defendant grab the victim's breasts and buttocks in the fall of 2013. Though Soens, Hughes, and DeJesus did not recall ever seeing defendant touch the victim, the weight of their testimony was arguably diminished by the fact that Soens and Hughes were social friends of defendant, and DeJesus's credibility was directly impeached by a rebuttal witness. Because of the substantial untainted evidence presented in this matter, it appears that the trial court's error in admitting the testimony about defendant's comment was harmless and does not warrant reversal. Accordingly, defendant is not entitled to relief on this issue.

## II. PROSECUTORIAL ERROR

Defendant also challenges his conviction on the basis of prosecutorial error. Specifically, defendant maintains that the assistant prosecutor infringed upon his due process right to a fair trial by denigrating defense counsel and describing the defense theory as moronic, ridiculous, and disgusting. According to defendant, the assistant prosecutor effectively implied that defense counsel was intentionally misleading the jury which, in turn, suggested that he did not believe defendant.

To preserve a claim of prosecutorial error, the defendant must "timely and specifically object[], except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *Unger*, 278 Mich App at 234-235 (citation omitted). Here, defense counsel objected to the prosecutor's characterization of his arguments as ridiculous, arguing that it amounted to improper denigration of counsel. However, the objection was not contemporaneously with the challenged rebuttal argument; the objection was not made until after the jury had received its instructions and begun its deliberations. Because the objection was not timely, this issue is not preserved for appeal.

This Court generally reviews claims of prosecutorial error de novo. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). However, because defendant failed to preserve this claim of error, this Court's review is limited to plain, or outcome-determinative, error. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). In reviewing claims of prosecutorial error, this Court examines the record to assess the prosecutor's remarks in context and in relation to the defendant's arguments to determine if the defendant was denied a fair and impartial trial. *Thomas*, 260 Mich App at 453-454. "[O]therwise improper remarks by the prosecutor might not require reversal if they respond to issues raised by the defense." *Callon*, 256 Mich App at 330. The prosecutor is generally given great latitude in its arguments at trial, *Unger*, 278 Mich App at 236, and is not limited to use of the "blandest of all possible terms," *Aldrich*, 246 Mich App at 112. However, the prosecutor must be careful to avoid denigrating or personally attacking defense counsel, for an argument of that nature "undermines the defendant's presumption of innocence [and] impermissibly shifts the focus of the evidence itself to the defense counsel's personality." *Unger*, 278 Mich App at 236, quoting *People v Wise*, 134 Mich App 82, 101-102; 351 NW2d 255 (1984).

During his closing argument, defense counsel suggested that the victim's testimony was not credible because she did not report defendant's alleged harassment to their employer or the

police, even though she asserted that it was an ongoing torment for an entire year. Rather, defense counsel opined that the victim fabricated the harassment charges in order to get revenge against defendant when she was suspended from work for her involvement in a workplace dispute. Defense counsel further argued that this theory was emphasized by the victim's failure to report defendant's "threat" against her daughter. Expanding upon this point, defense counsel stated:

> And you know when I ask her, ma'am, do you love your daughter she says yeah. And would you do anything to protect her? What did she say? No. What? Why didn't you go to the police when he said he wanted to [sic] the daughter?
>
> What? There's only one explanation for why it didn't happen. Why didn't she go to management? Why didn't she go to the police? The only explanation is it didn't happen. Because who in their right mind would say that this in fact did happen and then not go to management about it and say something, or not go to other friends and say something that [sic] turn around and tell him to knock it off, or go to the police and say this man has threatened to rape my 14 year old daughter?

Responding to this portion of defense counsel's argument, the prosecutor began her rebuttal argument as follows:

> (Inaudible) children (inaudible). Can't pay her bills because you're not getting paid. You're suspended without pay, you can't protect your kids. That's just, it's a moronic comment by somebody, it's a ridiculous thing to say, it's a disgusting thing to say. I would imagine in the setting in which these people work that is not something so outside the imagination that people (inaudible) crass and disgusting, and wrong, immoral.

On appeal, defendant contends that the words "moronic," "ridiculous," and "disgusting," were employed by the prosecutor to describe defense counsel's argument and, therefore, improperly denigrated the defense and suggested that defense counsel was attempting to mislead the jury. By contrast, the prosecutor maintains that the comment was not a reflection on defense counsel's argument; rather, it merely asserted that defendant's remark about the victim's daughter was so ridiculous and moronic that it could not have been construed as a serious threat, such that there was no need to report the comment and suffer a resulting suspension and wage loss.

Reviewing the prosecutor's remark in its full context, we believe that the prosecutor's interpretation of the challenged remark is a reasonable one. While the argument was rather ambiguous, the language used did not directly refer to defense counsel or his theory of the case—instead, it appears that the prosecutor was merely responding to defense counsel's theory about the victim's delayed reporting. This conclusion is also consistent with the trial court's first-hand view of the closing and rebuttal arguments. Rejecting defense counsel's untimely objection, the trial court noted that it "observed the demeanor of the Prosecutor and the Defense Attorney . . . [and] did not see anything that reflected any personal animus or denigration." The

trial court also found that "the argument was based upon the logic of the argument that was being put forth."

"During closing argument, a prosecutor may argue all the facts in evidence and all reasonable inferences arising from them, as they relate to the prosecutor's theory of the case." *People v Lane*, 308 Mich App 38, 63; 862 NW2d 446 (2014). It appears that the prosecutor's rebuttal in this case was properly rooted in evidence presented during the trial, namely, the testimony about the internal suspension policy that deterred the victim from reporting any workplace disputes. The victim also testified that she did not report defendant's comment because she knew it was "not going to happen." Thus, we do not believe that the prosecutor's brief remark amounted to prosecutorial error or infringed upon defendant's right to a fair and impartial trial. See *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996) (finding that the prosecutor's description of the defendant as a moron, an idiot, and a coward, did not require reversal "given the overwhelming evidence of defendant's guilt and the isolated nature of the comments"). Accordingly, defendant is not entitled to relief on this issue.

## III. SUFFICIENCY OF THE EVIDENCE

For his final claim of error, defendant contends that the evidence presented at trial was insufficient to prove each element of CSC-IV beyond a reasonable doubt. For a sufficiency of the evidence claim, we review the record de novo. *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). We "view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have concluded that the elements of the offense were proven beyond a reasonable doubt." *Unger*, 278 Mich App at 222. This Court must not interfere with the factfinder's role of "determining the weight of the evidence or the credibility of witnesses." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

When charged with CSC-IV pursuant to MCL 750.520e(1)(b), as defendant was here, "[a] person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and . . . [f]orce or coercion is used to accomplish the sexual contact." MCL 750.520e(1)(b); *Green*, 313 Mich App at 538. The term "sexual contact" is defined as

the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:

(i) Revenge.

(ii) To inflict humiliation.

(iii) Out of anger. [MCL 750.520a(q).]

In cases involving force, that element can be satisfied in several different ways, including when "the actor overcomes the victim through the actual application of physical force or physical

-10-

violence." MCL 750.520e(1)(b)(*i*); *People v Premo*, 213 Mich App 406, 409; 540 NW2d 715 (1995).

The victim testified that defendant pinched her nipple sometime in October, 2013. Pursuant to MCL 750.520a(f), "the breast of a human being" is considered an intimate part. The victim's testimony, if believed by the jury, the victim's testimony constituted sufficient legal proof that defendant intentionally touched an intimate part of her body, or the clothing covering an intimate area. She further testified that defendant had contacted other intimate parts of her body on multiple occasions, including her crotch and buttocks. The victim also stated that defendant made a number of comments about his desire to have sex with her and, on one occasion, exposed his penis to her. Viewing this evidence in the light most favorable to the prosecutor, a reasonable jury could infer that defendant had a sexual purpose when he pinched the victim's nipple and, therefore, conclude that defendant engaged in "sexual contact" with her on the day in question. Finally, though there was little evidence concerning defendant's use of typical force or coercion, this Court has previously held that the act of pinching an intimate area satisfied the force requirement for CSC-IV because it "requires a person to exert strength or power on another person." *Premo*, 213 Mich App at 409. Accordingly, the force element was evidenced by the victim's testimony indicating that defendant pinched her nipple with so much strength that she felt as though it was bruised. Thus, there was sufficient evidence from which a rational jury could have found that the essential elements of the crime were proven beyond a reasonable doubt.

Defendant's sufficiency claim rests primarily on his belief that the victim's testimony was not credible and that a significant portion of the trial testimony was comprised of inadmissible evidence that implied he was prone to devious sexual behavior. We reject defendant's claim of error, as both arguments are without merit. As already discussed above, the other-acts evidence was admissible under MRE 404(b), despite the prosecutor's failure to comply with the procedural notice requirements set forth in that rule. And although the evidence concerning defendant's comment about the victim's daughter lacked relevance and should not have been admitted, the error does not appear to have been outcome-determinative, and sufficient evidence existed apart from that isolated comment to support defendant's conviction.

With respect to defendant's attack on the victim's credibility, defendant's argument ignores the fact that the jury is in the best position to determine witness credibility. *People v Bailey*, 310 Mich App 703, 714; 873 NW2d 855 (2015). In recognition of this principle, we are bound to "draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Moreover, although a victim's testimony need not be corroborated in a CSC case, MCL 750.520h, the prosecutor offered evidence from other witnesses to support the victim's allegations. Gibson testified that he saw defendant grab the victim's breasts and nipples in the fall of 2013, and confirmed that defendant attempted to "grab her close to him," on other occasions. Likewise, another coworker heard someone shout "get your hands off me, don't touch me," and discovered defendant and the victim in the neighboring aisle when she investigated the commotion. Viewing the evidence in the light most favorable to the prosecutor, there was sufficient evidence presented from which a rational jury could find that defendant was guilty of CSC-IV beyond a reasonable doubt.

Affirmed.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello